**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: ) | Case No. 14-25820-D-11 |
| ) | |
| INTERNATIONAL MANUFACTURING ) | |
| GROUP, INC., ) | |
| ) | |
|          Debtor. ) | |
| _____) | |
| ) | |
| BEVERLY N. McFARLAND, ) | Adv. Pro. No. 15-2122-D |
| Chapter 11 Trustee, ) | |
| ) | |
|          Plaintiff, ) | Docket Control No. IWC-5 |
| ) | |
| v. ) | |
| ) | |
| LARRY A. CARTER, et al., ) | DATE: June 5, 2019 |
| ) | TIME: 10:00 a.m. |
|          Defendants. ) | DEPT: D |
| _____) | |

**MEMORANDUM DECISION**

The Defendants' Notice of Motion and Motion Under FRCP 37 for: Failure to Comply with a Court Order; Failure to Respond to Request for Inspection; and Request for Stay of Further Proceedings and for Monetary Sanctions (FRCP 37, 26) (the "Motion") came on for hearing at the time and place set forth above. The court having considered the moving and opposing papers, together with the defendants' reply filed thereafter, the court issues this memorandum decision.

This is the motion of the defendants in this adversary proceeding (the "defendants") for an order compelling the production of documents, under Fed. R. Civ. P. 37, incorporated herein by Fed. R. Bankr. P. 7037 ("Rule 37"), along with a

request for a stay of further proceedings in this adversary proceeding, and for monetary sanctions.[1] The plaintiff, International Manufacturing Group, Inc., a liquidating debtor, through The Beverly Group, Inc., plan administrator ("IMG"), has filed opposition and the defendants have filed a reply. A continued hearing has been set for July 31, 2019; however, as the court originally suggested was likely, the court finds oral argument would not be helpful and is not necessary. For the following reasons, the Motion will be denied.

The defendants initially complained that IMG first advised them in the summer of 2018 – three years after IMG's predecessor, the chapter 11 trustee, commenced this adversary proceeding – of the existence of 312 boxes of original documents retrieved from the debtor and its principal, Deepal Wannakuwatte. Instead of reviewing the documents in the boxes when they became aware of them, the defendants began, between July and October of last year, by "ask[ing] [IMG's] counsel to answer three simple questions regarding the 312 Boxes: (1) are the documents relevant to this action; (2) have they been previously produced; and (3)

---

1. The precise nature of the relief requested is unclear. Although labeled an order compelling IMG to produce documents responsive to the defendants' requests for production, the relief sought appears to be more in the nature of a request that IMG be required to review the documents in some 312 boxes previously made available to the defendants and to make a more accurate and more detailed description of the documents than IMG has previously done. The defendants acknowledge the 312 boxes of documents were made available to them, at least as early as January of this year.

- 2 -

which of the Request[s] for Production of Documents propounded by the seven Defendants are the documents responsive to?" Defendants' Memo., filed May 24, 2019 ("Memo."), at 4:13-16.

When IMG responded by producing only an allegedly "vague list of the 312 Boxes" (Defendants' Memo., filed Oct. 17, 2018, at 15:10) and allegedly offering them for review for only one week at IMG's counsel's San Francisco office, the defendants, in October of last year, filed a Rule 37 motion alleging IMG had failed to accurately identify the documents in the 312 boxes as responsive to the defendants' requests or relevant to the action. The court resolved the motion by order dated November 15, 2018 (the "Order"), which required, among other things, that IMG "identify, to the best of its current knowledge of the boxes and documents, which boxes contain documents responsive to which of the defendants' requests for production . . . ."

The parties spent the early months thereafter arguing, under the guise of meeting and conferring, about the extent of IMG's duties under the Order.[2] The defendants' counsel finally began reviewing the documents in January of this

---

2. "Between November 19th and early January 2019, Plaintiff's counsel and Defendants' counsel engaged in substantial meet and confer efforts regarding the identification of the contents of the 312 Boxes . . . ." Memo. at 5:7-9. The defendants offer this statement in support of their position they have satisfied their meet and confer obligation. The court has previously reminded the parties' counsel of its interpretation of the meet and confer requirement and its importance. The court does not view the requirement, however, as a substitute for actually reviewing documents offered for inspection.

year, after IMG had produced "an inventory of the 312 Boxes, including various spreadsheets that purportedly included: (a) the Box number; (b) a Description of the contents of [the] Box; and (c) the corresponding [request for production]." Id. at 5:10-12.  The defendants began their review by requesting and receiving from IMG particular documents from the 312 boxes that had earlier been reviewed and copied by a defendant in another adversary proceeding in this case – California Bank & Trust ("CBT") – some 8,000 records consisting of over 64,000 pages, according to the defendants.

The defendants claim it was from their review of those selected documents that they discovered a variety of inaccuracies in IMG's spreadsheets, including incorrectly identifying as "non-responsive" numerous boxes that actually contained documents directly responsive to several, perhaps many, of the defendants' requests and highly relevant to the defense of the case.  "But for Defendants' review [of the documents earlier reviewed and copied by CBT], Defendants would have never known of these highly relevant documents." Memo. at 13:16-17.[3]  There followed more months of calls, emails, and letters between the parties' counsel concerning the adequacy or inadequacy of IMG's inventory of the boxes, culminating in the filing of this motion.  The defendants

---

3. The defendants' decision to review the documents CBT had earlier selected is curious, as they now claim "the CBT matter is a separate claim involving wholly separate parties and issues. . . .  The claims are wholly distinct as [is] the relative importance of the documents."  Defendants' Reply, filed June 18, 2019 ("Reply"), at 3:6-7.

- 4 -

1 contend IMG's conduct in producing allegedly "blatantly
2 incorrect" (id. at 6:23) descriptions of the contents of the
3 boxes violated the Order and entitles them to relief under
4 Rule 37.

5 　　The court disagrees.  The defendants would expand the
6 scope of the Order well beyond what the court intended and
7 what it stated, suggesting the court intended they would
8 "understand the contents of the boxes before undertaking
9 [their] review."  Reply at 2:13-14.  The Order was
10 straightforward.  It did not require that the defendants or
11 their counsel be satisfied with IMG's descriptions of the
12 documents or that IMG ensure the defendants "understood" the
13 contents of the boxes before undertaking their own review.
14 The defendants' document production request included
15 approximately 190 separate categories of documents.  The
16 court in no way intended to burden IMG with identifying the
17 documents in each box as responsive to one or more of those
18 190 categories and specifying which one or ones.

19 　　The defendants have not cited, nor is the court aware
20 of a discovery rule that would require that level of work on
21 the part of a party responding to a document production
22 request.  The closest appears to be Fed. R. Civ. P.
23 34(b)(2)(E)(i), incorporated herein by Fed. R. Bankr. P.
24 7034, which requires a responding party to "produce
25 documents as they are kept in the usual course of business
26 or [to] organize and label them to correspond to the
27 categories in the request."  The defendants do not contend
28 the documents in the 312 boxes were not produced as they are

kept in the usual course of IMG's business, and they have cited no authority for the proposition that a party responding to a request for documents must do both – produce them as they are ordinarily kept <u>and</u> organize and label them to correspond to the defendants' categories.

    The court is not convinced the defendants would have relied on IMG's descriptions or categorizations or even its "non-responsive" characterization as definitive in any event. The court believes instead the defendants and/or their counsel would themselves have reviewed the documents in the boxes. This conclusion is supported by the defendants' repeated emphasis on the "exorbitant amount" sought by IMG (over $50 million) and their emphasis on the severity of IMG's charges against them.[4] However, even if it was the defendants' intention to rely on IMG's inventory to determine which documents in which boxes to review themselves, the court does not interpret Rule 34(b)(2)(E)(i) as requiring a party facing 190 separate document requests to go through the documents in 312 boxes and prepare detailed descriptions of the documents or to label them as responsive to one or more of the 190 requests. Nor does the court's November 15, 2018 order require any such thing. As IMG points out, the Order required it to so identify the

/ / /

---

    4. The defendants themselves state, "a thorough review of the Boxes is absolutely necessary based on the allegations in this case, including the false and defamatory claim that Defendants Carter/Sweigart were involved in Wannakuwatte's criminal enterprise." Memo. at 14:6-8.

boxes only "to the best of its current knowledge of the boxes and documents."

The court is also not persuaded IMG's alleged characterization of the documents in the 312 boxes as "largely duplicative, cumulative, immaterial, or non-responsive" (Memo. at 2:2-3) harmed the defendants. Again, the court does not view a responding party's duty as including preparing a complete and accurate list of the documents in 312 boxes and specifying which pertained to which of 190 separate document requests. Further, and importantly, it is not reasonable to expect that IMG's and its counsel's characterizations of the documents would be the same as the defendants' and their counsel's views. Thus, the court rejects the defendants' conclusion that IMG's conduct with respect to the boxes was an attempt to "(a) drive up Defendants' fees and costs and (b) prevent Defendants from meaningfully defending themselves." Id. at 2:19-20. The defendants' references to the findings of the FBI and the IRS and to Wannakuwatte's plea agreement, "in which [according to the defendants] he admitted he acted alone" (Memo. at 3:17), are irrelevant to this motion, inadmissible hearsay, and, to the extent this court is aware of Wannakuwatte's likely credibility, unpersuasive.

The defendants acknowledge IMG, in response to the Order, produced an inventory, including spreadsheets, and the defendants do not deny they have had access to all of the boxes since at least as early as January. They claim they did not review some of the boxes IMG had identified as

containing only non-responsive documents until June 3, 2019 because they were "relying on the accuracy of [IMG's] descriptions." Reply at 1:3. This is hard for the court to imagine as the defendants had been complaining of, if nothing else, the incompleteness of IMG's descriptions as early as October of 2018. That they chose to delay their complete review, and thus, have not taken the deposition of former FBI agent Paul Artley, is due to their own choices. The court is not convinced IMG's alleged "refusal to properly identify the boxes" (Memo. at 14:9-10) slowed the defendants' review of the documents.[5] Finally, that the defendants chose a solo practitioner as their counsel and that he happened to have found it necessary to undergo back surgery in the past six months are circumstances not chargeable to IMG.

    As IMG points out in its opposition, the court is to be mindful of proportionality in determining discovery motions. It would defy that principle to penalize IMG or to delay this proceeding further because of the alleged insufficiency of IMG's inventory of the boxes. Ironically, the defendants rely on the "exorbitant" amount IMG seeks from them and the critical nature of the documents to their defense as calling for a yet more complete review and description of the

---

    5. The court is aware of the defendants' contention, in their reply, that some of the boxes they reviewed on June 3, 2019 had detailed descriptions on labels whereas IMG's spreadsheets showed those boxes as containing only "non-responsive" documents. In light of the court's overall findings and conclusions, as set forth herein, the court finds this contention to be insignificant.

documents by IMG, whereas the court sees those factors as calling for the defendants themselves and/or their counsel to review or to have reviewed the documents made available to them.

    For the reasons stated, the court will issue an order denying the Motion and remove the July 31, 2019 hearing from calendar.

Dated: July 17, 2019

                                                Robert S. Bardwil, Judge
                                                United States Bankruptcy Court

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| **Plaintiff**(s): | **Attorney for Plaintiff**(s) (if any):<br><br>Christopher D. Sullivan<br>Diamond McCarthy LLP<br>150 California Street, Suite 2200<br>San Francisco, CA 94111 |
|---|---|
| **Defendant**(s): | **Attorney for Defendant**(s) (if any):<br><br>Ian Craig, Esq.<br>LAW OFFICES OF IAN W. CRAIG, PC<br>2023 N Street, Suite 200<br>Sacramento, CA 95811 |
| **Bankruptcy Trustee** (if appointed in the case): | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |