**[13]**
ALLAN B. DIAMOND (*Pro Hac Vice*)
CHRISTOPHER D. SULLIVAN (148083)
LYNN HOLLENBECK (181473)
KAREN K. DIEP (305587)
DIAMOND McCARTHY, LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200
Email: adiamond@diamondmccarthy.com
 csullivan@diamondmccarthy.com
 lynn.hollenbeck@diamondmccarthy.com
 kdiep@diamondmccarthy.com

Special Litigation Counsel for Plaintiff,
International Manufacturing Group, Inc.,
a Liquidating Debtor, by and through
The Beverly Group, Inc., Plan Administrator

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>INTERNATIONAL MANUFACTURING GROUP, INC.,<br><br>    Debtor.<br>___<br>BEVERLY N. McFARLAND, Chapter 11 Trustee for International Manufacturing Group, Inc.,<br><br>    Plaintiff,<br><br>   vs.<br><br>LARRY A. CARTER, JACK T. SWEIGART, VICTORIA J. SWEIGART, JTS COMMUNITIES, INC., C.I.M.G. JV, LLC, BRISTOL INSURANCE COMPANY, AND SCB INVESTMENTS,<br><br>    Defendants. | Case No. 14-25820-D11<br><br>Adv. Proc. No. 15-02122<br><br>DCN: FEC-2<br><br>Chapter 11<br><br>**SECOND JOINT STATUS REPORT FOR PRETRIAL CONFERENCE**<br><br>Pretrial Conference Set For:<br><br>Date:  January 21, 2020<br>Time:  1:30 p.m.<br>Place:  501 I Street, 7th Floor<br>      Sacramento, CA 95814<br>Crtrm: 28<br>Judge: Hon. Fredrick Clement |

This Second Joint Status Report is submitted by Plaintiff International Manufacturing Group, Inc., a Liquidating Debtor, by and through The Beverly Group, Inc., Plan Administrator, successor to Beverly N. McFarland, Chapter 11 Trustee of International Manufacturing Group, Inc. ("Plaintiff"), and Defendants Larry A. Carter, Jack T. Sweigart, Victoria J. Sweigart, JTS Communities, Inc., C.I.M.G. JV, LLC, Bristol Insurance Company, and SCB Investments ("Defendants"), by and through their respective undersigned counsel, pursuant to the Court's order reflected in the Civil Minutes of the October 21, 2019 hearing (Dkt. No. 320) ("Minute Order") and supplements the parties' Joint Status Report filed on October 14, 2019 (Dkt. No. 311).

1.  <u>Telephonic Meet and Confer</u>:  Pursuant to the Minute Order, Plaintiff and Defendants met and conferred through their counsel by telephone on January 2, 2020, to address the issues reflected in the Minute Order, specifically items 5(a) through (g) and related matters.

2.  <u>Motion for Further Answers to Request for Admissions:</u>

The Court on December 20, 2019 issued an order granting in part and denying in part Defendants' Motion to Challenge the Sufficiency of Plaintiff's Responses to Defendants Jack T. Sweigart and Larry A. Carter's Requests for Admissions, Sets One, Two, and Three. (Order, Dkt. No. 377.) While the motions with respect to motion of the RFA's was denied, Plaintiff was ordered to provide further responses to Defendant Larry A. Carter's Requests for Admissions Nos. 16, 118, 133, 138, 166, 188, and 245 and Defendant Jack T. Sweigart's Request for Admissions Nos. 16, 115, 135, 139, and 184 by Monday, January 20, 2020.

***Defendants' Statement:***  This Court's December 20, 2019 Order issued sanctions against Plaintiff's counsel in the sum of $3,110.71. This amount has yet to be paid.

3.  <u>Motion for Costs for Recovery of Attorney Fees:</u>

The parties have submitted their papers with regards to Defendants' Motion for Attorney's Fees and Costs Following Plaintiff's Motion to Withdraw Admissions. This motion is scheduled to be heard on Monday, January 6, 2020 at 1:30 p.m.

4.  <u>Contention Interrogatories Served with Request for Admissions</u>:

***Plaintiff's Statement:***

The deadline for Defendants Jack T. Sweigart and Larry A. Carter to move to compel responses

has long passed. Plaintiff's one- or two-day delay in serving the responses did not relieve Defendants from their burden of seeking relief from this Court. Defendants failed to obtain relief from this Court by moving to compel responses before the June 13, 2019 discovery deadline set forth in this Court's January 14, 2019 order. (Order, Dkt. No. 207.)

Defendants missed their opportunity to timely seek relief, after receiving the responses on April 29, 2019, May 15, 2019, and May 22, 2019. In particular, Defendants did not file a motion to compel responses to (a) Defendants Jack T. Sweigart and Larry A. Carter's second set of contention interrogatories and (b) Defendants Jack T. Sweigart and Larry A. Carter's third and fourth sets of contention interrogatories within the time period prescribed under local rule 9014(f)(1) and/or 9014(f)(3) to be heard before the June 13, 2019 discovery deadline. More importantly, Plaintiff has already responded at length to Defendants' one hundred and forty-six written interrogatories, providing an original set of responses and one to two sets of extensive supplemental responses to the Defendants' interrogatories served in December 2015, with the latest supplemental responses served in June 2018.

*Defendants' Statement:*

Plaintiff served untimely responses to Defendants' Special Interrogatories requesting that Plaintiff identify the (a) facts (b) witnesses and (c) documents that form the basis for their denial of Defendants' Request for Admissions (as discussed with this Court, these are the Federal Court equivalent of Form Interrogatory 17.1). Plaintiff waived objections to the Special Interrogatories, and has not served supplemental responses. Defendants' request that the Court permit a Motion to Compel Further Responses to Special Interrogatories. Defendants' could not file a Motion to Compel as to the RFAs since they were untimely served and deemed admitted.

5. <u>Continued Deposition of Beverly N. McFarland:</u>

*Plaintiff's Statement:*

Defendants took absolutely no steps after they were given the express opportunity to take the deposition of Beverly N. McFarland through written questions. Pursuant to this Court's November 15, 2018 Order, "any further deposition of Beverly N. McFarland may be taken only by written questions or interrogatories[.]" (Order, Dkt. No. 190, ¶ 3.) On January 14, 2019, the parties entered into a stipulation to extend discovery and other deadlines, including the deadline for Defendants to serve

written deposition of Beverly N. McFarland. (Stipulation, Dkt. No. 206, p. 5.) Under the Stipulation, if Defendants wished to serve written deposition questions for Beverly McFarland to respond to as permitted by the Court's November 15, 2018 Order, then Defendants, must have served deposition questions by March 15, 2019 or Defendants' conclusion of the review of the selected boxes, which was later. (*Id.* at p. 6.)

Defendants did not serve deposition questions by March 15, 2019 as contemplated by the Stipulation. Instead on May 24, 2019, Defendants moved under Federal Rule of Civil Procedure 37 for Plaintiff's alleged failure to comply with the Court's November 15, 2018 Order and respond to request for inspection and request for a stay of further proceedings and monetary sanctions. (*See* Defendants' Motion, Dkt. No. 210.) Defendants' motion neither addressed the depositions of Beverly N. McFarland nor of Kerrie Kinsey (*infra*) and the redacted Responses to Interrogatories (*infra*) and instead focused on the extension of fact discovery to take the deposition of former FBI agent Paul Artley and to review the 312 boxes of documents that have been available to Defendants as early as the Summer of 2017.

This Court on July 17, 2019 denied Defendants' Motion in its entirety (Order Denying Motion, Dkt. No. 232) and issued a Memorandum and Decision (the "Memorandum and Decision"). The Court's opinion noted that Defendants "chose to delay their complete review [of the boxes] and thus, have not taken the deposition of former FBI agent Paul Artley is due to their own choices" (Memorandum and Decision, p. 8.) should equally apply here, where Defendants chose to not serve written deposition questions on Beverly N. McFarland before the completion of their document review. Though Plaintiff have since agreed and taken the deposition of former FBI agent Paul Artley, Plaintiff will not agree to the continued deposition of Beverly N. McFarland.

Ms. McFarland's health continues to prevent her for sitting for deposition and there are no proper grounds to justify a continued deposition.

***Defendants' Statement:***

Ms. McFarland has avoided having her deposition completed for two years. She is the Trustee who first brought this action against two of the largest creditors in the IMG Bankruptcy, Carter and Sweigart, to whom she owes fiduciary duties. She has accused Carter/Sweigart of (a) conspiring with Wannakuwatte and (b) reporting Wannakuwatte to the FBI not to investigate Wannakuwatte but to

1 cover up their own criminal culpability. Not allowing McFarland to be deposed would deny
2 Carter/Sweigart their fundamental right of confronting their accuser. Her doctor's most recent letter
3 (from October 2018) states that her symptoms should have completely resolved as of Fall 2019.

    6. <u>Deposition of Another Bank Officer, Kerrie Kinsey:</u>

***Plaintiff's Statement:***

Defendants' Notice of Taking Videotaped Deposition seeking the deposition of Kerrie Kinsey, an employee of California Bank and Trust ("CBT") violates is unnecessary and Federal Rules of Civil Procedure 30, made applicable in this adversary by Federal Bankruptcy Rule 7030. Federal Rule of Civil Procedure 30(a)(2)(i) limits the number of depositions allowed per side to 10 depositions unless the party seeking additional depositions obtains a stipulation or Court order. Defendants have already noticed and conducted ten depositions of witnesses with Defendants' completion of the deposition of Paul Artley in September 2019. The witnesses include: (1) Paul Artley; (2) Steven Delaney; (3) Beverly McFarland; (4) Betsy Wannakuwatte; (5) Sammy Cemo; (6) Ursula Klein; (7) Ron Rishwain; (8) Michael Gabrielson; (9) Kevin Whelan, individually; (10) PMQ of Beverly N. McFarland, Chapter 11 Trustee of International Manufacturing Group, Inc. (successor The Beverly Group, Inc., Plan Administrator, through Kevin Whelan).

The Kinsey deposition is also excessive given the other discovery conducted to date. The Defendants have repeatedly referred the Court to what they characterize as a million pages of documents produced in the case. Defendants have conducted the full limit of ten depositions allotted to their side, and Plaintiff has conducted an additional eight depositions. The stated purpose of the deposition of the CBT bank employee is to testify regarding the bank accounts at CBT, as to which tens of thousands of pages of bank records have been produced, including all bank account records Plaintiff obtained from CBT through a Rule 2004 examination. The Kinsey deposition is unreasonably cumulative, duplicative, and excessive. Further, based on Defendants' description at the October 21, 2019 hearing of the reason they want to depose the bank officer, namely to address the Wannakuwatte accounts at the bank, that deposition subject is directly tied to the RFA responses. Specifically, Plaintiff has already made significant admissions regarding the CBT bank accounts related to Defendants' good faith defense. Plaintiff has also produced to Defendants a spreadsheet reflecting the account number,

1  account holders, and signatories of forty-six bank accounts at CBT on June 12, 2018.

2  Moreover, the Kinsey deposition should also not be permitted based on the current discovery
3  cutoff.  The discovery cutoff under the Court's January 14, 2019 Order (Dkt. No. 207) was June 13,
4  2019.  Plaintiff and Defendants had agreed prior to that date that Defendants could conduct the Paul
5  Artley deposition, Defendants' tenth deposition, prior to the June 13, 2019, and that Plaintiff would not
6  object to that deposition based solely on the fact it was conducted after the discovery cutoff if the
7  deposition could not be conducted until after the discovery cutoff because of scheduling issued with the
8  United States Attorney's Office.  Otherwise, the discovery cutoff on depositions and other discovery
9  stands unless modified by Court order under Federal Rules of Civil Procedure 16(b)(3)(A) made
10 applicable to this adversary through Federal Bankruptcy Rule 7016.

11 This Court specifically only re-opened discovery for the purpose of allowing Defendants to file
12 their Rule 36(a)(6). The Court's Order issued on October 23, 2019, approved by Defendants' counsel
13 Ian Craig, states in pertinent part the following with respect to the re-opening of discovery:

14 Discovery is re-opened for the limited purpose of authorizing Defendants to file a
15 Motion Regarding the Sufficiency of an Answer or Objection under Rule 7036 of the Federal
16 Rules of Bankruptcy Procedure and Rule 36(a)(6) of the Federal Rules of Civil Procedure by
17 November 6, 2019 if Defendants elect to file such a motion.

18 Neither the minutes nor the transcript of the October 21, 2019 hearing reflects that the Court
19 re-opened discovery to allow the Defendants to conduct the additional depositions referenced at the
20 hearing and in the minutes, or to pursue any of the other discovery Defendants identified.  Instead, the
21 record reflects that Defendants were simply asked to list all the discovery they believed was
22 unresolved based on the withdrawn admissions for consideration by the Court in connection with
23 Defendants' Rule 36(a)(6) motion to evaluate what relief would be necessary to restore Defendants to
24 the position they would have occupied had they not relied on the deemed admissions. Defendants
25 cannot unilaterally expand this Court's order and the rules of civil procedure.

26 In addition, CBT has objected to and will move for a protective order, as evidenced by its filing
27 of a motion to quash subpoena or, in the alterative, for a protective order in this adversary proceeding
28 on November 12, 2019. (Dkt. No. 345.)  The basis of CBT's position and motion is that: (1) discovery

1 in this action has been closed, except for the limited purpose of Defendants' Rule 36(a) motion; (2)
2 Ms. Kinsey has been previously deposed by Defendants in the State Court Action; and (3) Ms. Kinsey
3 recently started a new job and is no longer in a position to take time off to sit for a second, redundant
4 deposition. CBT contends and Plaintiff agrees that forcing Ms. Kinsey to sit through a second,
5 redundant deposition unjust ably creates an undue burden for her, especially since she (and Plaintiff)
6 has no objection having her prior deposition testimony admitted into evidence in this action.

***Defendants' Statement:***

Defendants have not completed ten (10) depositions, as they have not completed the McFarland deposition. The McFarland deposition was terminated at Plaintiff's request. In any event, this Court has the power to permit additional depositions at its discretion. This is a $50 million claim involving a multitude of issues and approximately one million documents. An additional deposition is certainly justified.

As to the deposition of CBT's Kinsey, it is justified based not only on the claims made in this action, but the claims that the Trustee made in their now-resolved action against CBT.

In this action, the Trustee claims that Carter/Sweigart were active participants in the IMG Wholesale Division. IMG Wholesale was a front for the Ponzi scheme. The IMG Wholesale had one primary account, called "IMG Wholesale" at CBT. Hundreds of millions of dollars were run through this account.

If Carter/Sweigart had no control, access to or knowledge of the IMG Wholesale Account at CBT, it is highly probative in demonstrating that they were not, in fact, active participants in the IMG Wholesale division/Ponzi scheme. Plaintiff has denied that Carter/Sweigart had no control over the IMG Wholesale account.

Kinsey has been identified by Plaintiff as a key witness as to the IMG Wholesale account. Kinsey was a Customer Service Manager for California Bank & Trust and an Officer on IMG Account. Kinsey opened the IMG Wholesale account, she assisted Wannakuwatte in moving funds in and out of the account, and she met with Wannakuwatte.

Kinsey's testimony is also critical to Defendants' claim that this action is barred by the doctrine of Judicial Estoppel, based on the recent settlement of *McFarland v. CBT,* adversary no. 16-

02090 ("CBT Action").

The CBT Action was brought by the Trustee on behalf of "innocent investors". In the CBT Action, the Trustee claimed in verified discovery responses that the innocent investors did not know of "CBT's role in directly facilitating Wannakuwatte's fraudulent schemes".

Defendants' position is that they are included in the definition of "innocent investors". The Trustee has denied this claim.

Kinsey is a critical witness based, among other things, on the Trustee's verified responses to interrogatories in the McFarland v. CBT matter. Moreover, CBT's fraud is highly probative to Defendants' claims that they were unaware of the Ponzi scheme that Wannakuwatte perpetrated with CBT's assistance.

According to the Trustee's verified discovery responses in the CBT Action:

1. Kinsey has knowledge relating to the "innocent investors", who did not know about CBT's role in directly facilitating Wannakuwatte's fraudulent schemes until the Trustee filed the action.

2. The Trustee alleged that Wannakuwatte's Ponzi scheme was run primarily through the IMG Wholesale account at CBT, along with other accounts at CBT. Kinsey has intimate knowledge relating to the Wholesale Account at CBT.

3. Kinsey has knowledge that CBT facilitated the Ponzi scheme by providing loans to Wannakuwatte based on collateral provided by investors. The investors were unknowing guarantors of the loans. None of the investors would have expected that CBT would have used their collateral in such a manner.

4. Kinsey has knowledge that the loan advances to IMG weren't used for legitimate business needs, such as to pay suppliers.

5. Kinsey has knowledge that the loans were paid off by investors, including my clients. Kinsey knew that the investors were paying off the loans. The investors did not know that their funds were paying off loans.

6. Kinsey has knowledge that CBT advanced funds to Wannakuwatte solely based on verbal instructions.

7. Kinsey has knowledge regarding "red flags" that would have put CBT on notice of Wannakuwatte's fraud.

7. <u>Disclosure of Redacted Responses to California Bank & Trust's Interrogatories</u>

***Plaintiff's Statement:***

Plaintiff's Responses to CBT's Special Interrogatories, Set One in *McFarland v. CBT,* adversary no. 16-02090 ("Responses") ("CBT Action"), are properly redacted, in accordance with the Amended Stipulated Protective Order entered in the CBT Action. CBT has directed that the material be deemed confidential. Under Section 8 of the Amended Stipulated Protective Order, only a subpoena or court ordered issued in another litigation compels the disclosure of information or items designated in the CBT Action as either "Confidential" or "Confidential – Attorneys' Eyes Only."

Defendants have not sought relief from this court by moving to compel further responses to Plaintiff's Responses before the June 13, 2019 fact discovery deadline. Further, though Defendants have issued and served Plaintiff with a subpoena from their separate and pending lawsuit against CBT in state court, *JTS Communities, Inc. v. CBT,* Superior Court of California, County of Sacramento, case number 17-02109 ("State Court Action"), Defendants never moved to compel in the State Court Action.[1]

Plaintiff has also advised CBT of Defendants Request for the unredacted Responses and CBT for permission to provide Defendants with an unredacted copy of the Responses. CBT, however, responded that due to the highly confidential nature of the documents and information contained in the Responses, it did not grant Plaintiff permission to produce an unredacted copy of the Responses without a court order or subpoena. Further, pursuant to Section 8 of the Amended Stipulated Protective Order, the designating party could seek a protective order once a responding party is served with a subpoena or court order for the Confidential or "Confidential – Attorneys Eyes Only" material.

Plaintiff has continuously met and conferred with Defendants in good faith regarding Plaintiff's position that Defendant' beef is with CBT, not Plaintiff. The parties met and conferred by telephone on April 30, 2019 regarding, among other things, the Responses where Plaintiff stated its position that

---

[1] Plaintiff revised this statement after counsel for the Defendants approved a prior draft of the Second Joint Status Report.

1  pursuant to the Stipulated Protective Order in the CBT Action, Defendants were not entitled to all of
2  Plaintiff's Responses.
3      Following the parties' teleconference, on May 1, 2019, Plaintiff restated its position that
4  although Plaintiff disagrees with Defendants' position, Plaintiff was producing a redacted copy of the
5  Responses to Defendants, including redacted portions of Interrogatory Nos. 7, 13, 15, 17, 18, 19, 22,
6  23, 29, and 30.  Out of thirty-nine (39) responses, only ten (10) were partially redacted in accordance
7  with the Stipulated Protection Order, while the other Responses were completely unredacted. Plaintiff
8  also provided Defendants with a copy of the Stipulated Protective Order and encouraged Defendants to
9  deal directly with CBT given the State Court Action. However, Defendants continued to demand the
10 unredacted version of the Responses but failed to move to compel further production of the Responses
11 before the June 13, 2019 discovery deadline.
12     *Defendants' Statement:*
13     Plaintiff's failure to produce un-redacted, verified discovery responses in the CBT Action
14 further illustrates the bad faith nature of this action and its attempt to victimize these victims.
15     Plaintiff claims the following: "Defendants have not issued and served Plaintiff with a subpoena
16 from their separate and pending lawsuit against CBT in state court, *JTS Communities, Inc. v. CBT*,
17 Superior Court of California, County of Sacramento, case number 17-02109 ("State Court Action")."
18     This is false.  On May 23, 2019, Defendants served Plaintiff with a Subpoena in the State Court
19 Action.  In the Subpoena, Defendants specifically requested all of the discovery in the CBT Action.
20     Plaintiff failed to comply with the Subpoena by not producing unredacted documents and failed
21 to file a Motion preserving the confidential nature of the CBT discovery.  Accordingly, under Section
22 6.3 of the Stipulated Protective Order (SPO) in this matter, Plaintiff has **waived** its objection.  See SPO,
23 Section 6.3 ("failure by the Designating Party to make such a motion including the required declaration
24 within 21 days (or 14 days, if applicable) **shall automatically waive the confidentiality designation**
25 **for each challenged designation**") (emphasis ours).
26     Defendants expressly request that this Court permit Defendants to file a Motion to Compel
27 production of the unredacted discovery.
28     Plaintiff served heavily redacted discovery responses from the CBT Action.  Defendants have

not moved to compel the production because this Court has not permitted Defendants to do so as discovery is closed.

There is no basis for Plaintiff's refusal to produce unredacted discovery responses. Plaintiff should be compelled to produce unredacted discovery from the CBT Action under the Stipulated Protective Order entered into in this action and the fact that the CBT Action has been resolved.

8. <u>Seven-Five Day (75) Extension of Fact Discovery:</u>

***Plaintiff's Statement:***

There has been more than ample time for Defendants to conduct discovery in this action. Plaintiff continues to believe that fact discovery properly ended on June 13, 2019 and the case is ready for trial. During the four years in which this case has been pending, the parties have exchanged multiple sets of written discovery and produced or made available for inspection over 1,000,000 documents. Plaintiff has responded to over a 1,200 written discovery requests,[2] conducted depositions of 8 deponents, and served 6 subpoenas, three to financial institutions and three for records of other non-parties. Similarly, Defendants have also noticed and conducted 9 depositions, including Plaintiff's expert Michael Gabrielson, Kevin Whelan both in his individual capacity and as a representative of Plaintiff the Plan Administrator, and most recently, the deposition of former FBI Special Agent Paul Artley.

Over the four years of active litigation, the parties agreed to a series of stipulations to extend discovery and pretrial deadlines. Plaintiff several times resisted extending discovery but agreed to stipulations for limited extensions with specific benchmarks. However, Defendants continued to seek new discovery complaining Plaintiff's efforts to provide requested discovery were insufficient. Defendants never made a motion to compel further responses to any of their discovery.

Though Plaintiff expects Defendants to continue contending that no pretrial or trial dates can be set until the issues outlined above and in this Court's October 21, 2019 Minute Order is resolved, Plaintiff believes that deadlines for dispositive motions, the pretrial conference, and trial can be set.

---

[2] Four hundred and eighty-two (482) requests for production of documents, 146 written interrogatories, 572 requests for admissions. As noted above, Plaintiff has responded at length to Defendants' interrogatories, providing an original set of responses, and one to two sets of extensive supplemental responses to the Defendants' interrogatories served in December 2015, with the latest supplemental responses served in June 2018.

Defendants will seek to delay discovery to avoid a trial on the merits. In this regard, Plaintiff requests that this Court enter a pretrial scheduling order.

*Defendants' Statement:*

Defendants' position is that Plaintiff should not be rewarded for (1) its untimely Responses to Defendants' Request for Admissions (RFAs) in violation of FRCP 36, served on the Trustee in March 2019; and (2) its **two** untimely Motions to Withdraw Deemed Admissions (served several months after the Discovery Cutoff date), the most recent of which was granted by this Court on October 7, 2019 (Doc #309).

Defendants should be placed in the **same position that they would have been had the RFA responses been timely served by Plaintiff**, including the right to any follow up discovery. Any other result would operate to substantially prejudice Defendants.

Defendants' right of discovery should include: (1) completing the deposition of Beverly McFarland; (2) the deposition of CBT employee Kerrie Kinsey; (3) challenging the "confidential" designation of the redacted discovery in the CBT Action; (4) conducting follow-up discovery following Plaintiff's amended RFA Responses, which are due on January 20th.

As this Court is aware, the first set of RFAs were served nearly three months before the discovery cutoff, Defendants therefore had two months to conduct follow up discovery. When Plaintiff's Responses to the RFAs were untimely, Defendants justifiably relied on the express provisions of Rule 36(a) stating that the untimely responses were "deemed admissions".

An example of the bad faith nature of the Trustee's RFA responses is as follows: The crux of the Trustee's claim is that Defendants Carter/Sweigart were partners/joint venturers with Deepal Wannakuwatte in the fictitious IMG "Wholesale" division. Plaintiff's claim IMG's Wholesale division was used as a front for the Ponzi scheme. The IMG Wholesale account—through which hundreds of millions of investor dollars (including Defendants) were funneled—was maintained at CBT.

In Defendants' first set of RFAs, Plaintiff was asked to admit that neither Sweigart nor Carter controlled the IMG Wholesale account. Plaintiff claimed it had "**lacks sufficient knowledge**" to admit or deny this critical fact, even though Plaintiff has had complete access to all of CBT's bank records since 2015. Follow up discovery—including the deposition(s) of CBT personnel, if necessary—is

1  critical to enable Defendants to prove this material fact, which was "deemed admitted" until this
2  Court's October 7th Order.
3　　　　Defendants' assert that the CBT Action is based on fraudulent conduct committed by
4  CBT/Wannakuwatte as to Defendants in this action.  As such, among other defenses, this action is
5  barred by the defense of Judicial Estoppel.  The Judicial Estoppel defense was not fully explored
6  through the discovery process since all of the RFAs relating to this issue were admitted or "deemed
7  admitted".   Moreover, Defendants did not fully brief the Judicial Estoppel defense in its Motion for
8  Summary Judgment, since the Motion was based primarily on "good faith" and the deemed admissions.
9　　　　Plaintiff's Amended Responses to Requests for Admissions are due no later than January 20,
10  2020.  If Plaintiff's Responses remain insufficient, Defendants should be entitled to follow up
11  discovery.  Therefore, the Discovery should be reopened and the Discovery Cutoff should be extended
12  for seventy-five (75) days.  Moreover, based on the Court's Order granting Plaintiff's Second Motion
13  to Withdraw Deemed Admissions, Defendants' Motion for Summary Judgment/Summary Adjudication
14  was withdrawn.  The Court has not set a deadline for hearings on Dispositive Motions.
15　　　　WHEREFORE, the parties present their Second Joint Status Conference and joint requests for
16  procedural relief as set forth herein.

17  Dated:  January 7, 2020　　　　　　　DIAMOND MCCARTHY LLP

19　　　　　　　　　　　　　　　　　　By: */s/ Christopher D. Sullivan*
20　　　　　　　　　　　　　　　　　　　　Christopher D. Sullivan
　　　　　　　　　　　　　　　　　　　　Special Litigation Counsel for Plaintiff,
　　　　　　　　　　　　　　　　　　　　International Manufacturing Group, Inc., a
21　　　　　　　　　　　　　　　　　　　Liquidating Debtor, by and through The Beverly
22　　　　　　　　　　　　　　　　　　　Group, Inc., Plan Administrator

24  Dated:  January 7, 2020　　　　　　　LAW OFFICES OF IAN W. CRAIG, PC

26　　　　　　　　　　　　　　　　　　By: */s/ Ian W. Craig*
　　　　　　　　　　　　　　　　　　　　Ian W. Craig
27　　　　　　　　　　　　　　　　　　　Attorneys for Defendants