**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>INTERNATIONAL MANUFACTURING GROUP, INC.,<br><br>         Debtor. | Case No. 14-25820-A-11 |
| BEVERLY N. MCFARLAND,<br><br>         Plaintiff,<br><br>     v.<br><br>LARRY A. CARTER et al.,<br><br>         Defendants. | Adv. No. 15-2122-A<br><br>IWC-11<br><br>**MEMORANDUM** |

Argued and submitted on February 17, 2021

at Sacramento, California

Honorable Fredrick E. Clement, Bankruptcy Judge Presiding

| | |
|---|---|
| Appearances: | Christopher D. Sullivan, Karen Diep, Lynn Hollenbeck, Diamond McCarthy LLP for plaintiff Beverly N. McFarland; Ian W. Craig, Law Offices of Ian W. Craig and Glenn W. Peterson, Peterson Watts Law Group, LLP for defendants Larry A. Carter, Jack T. Sweigart, Victoria J. Sweigart, JTS Communities, Inc., C.I.M.G. JV, LLC, Bristol Insurance Company, and SCB Investments |

May a plaintiff seek to impose liability arising from the same transaction or occurrence against different defendants under different positions? Yes, provided the plaintiff's positions in the different actions are not mutually exclusive.

**I. FACTS**

    **A. International Manufacturing Group**

International Manufacturing Group, Inc. ("IMG") imported latex, nitrile and other medical gloves manufactured in Asia for sale in the United States. It purported to have two sides of its business: a retail division and a wholesale division. Sometimes the retail division broke even; sometimes it lost money.

In reality, the wholesale division was a $150 million dollar Ponzi scheme. The central player in the IMG's Ponzi scheme was Deepal Wannakuwatte ("Wannakuwatte"). Starting in 2004, Wannakuwatte "solicited investors to invest in 'bids' related to purported shipments of gloves from Asian manufacturers—primarily Malaysia—to IMG's purposed customers, in particular the U.S. Department of Veterans Affairs." Compl. 4:5-7, June 8, 2015, ECF No. 1. "IMG's investors were told that their investments were directly related to such shipments, and they were essentially financing IMG's supposedly highly profitable inventory purchases." *Id.* at 4:7-9. In exchange, investors received short-term promissory notes paying between 12% and 20%. Rather than being used to purchase and import gloves, the investor's monies were used to fuel the Ponzi scheme and were diverted to Wannakuwatte and others.

Wannakuwatte used account number 4841 at California Bank & Trust to carry out his financial machination. That account functioned as a "common pot" into which monies from new investors were deposited and

payments to existing creditors were made. *Id.* at 4:15-20. "Virtually all payments made to IMG's investors were made with funds obtained from new investors and/or other lenders." *Id.* at 4:20-21.

Among Wannakuwatte's investors were Larry A. Carter, Jack T. Sweigart and related entities (collectively "Carter and Sweigart"). Carter and Sweigart invested $83.2 million in IMG. They also provided standby letters of credit to IMG, which Wannakuwatte used as collateral for loans from California Bank & Trust. The California Bank & Trust loans provided Wannakuwatte large amounts of cash that Wannakuwatte used to prop up his Ponzi scheme. Carter and Sweigart sustained a net loss of $26.7 million in the Ponzi scheme (investing $83.2 million and receiving $56.5 million back). Gabrielson Dep. 202:24-203:3 and McFarland Dep. 127:14-128:4, Separate Statement Undisputed Facts Exh. 14 & 15, October 13, 2020, ECF No. 545.

In 2014, IMG sought Chapter 11 protection. Beverly McFarland ("McFarland") was appointed the Chapter 11 trustee. A liquidating plan was confirmed, which continued McFarland's service as trustee.

Wannakuwatte was charged with, and pled guilty to, fraud. First Am. Compl. 5:5-10, ECF No. 1. For this role, he was sentenced to 20 years in prison. *Id.*

**B.　The Carter/Sweigart Action**

In 2015, McFarland filed the instant adversary proceeding against Carter and Sweigart to recover fraudulent conveyances. Compl., ECF No. 1; 11 U.S.C. §§ 548(a)(1)(A), 544; Cal. Civ. Code § 3439.04 ("Carter/Sweigart action"). Carter and Sweigart filed an answer, ECF No. 13.

**C.　The California Bank & Trust Action**

In 2016, McFarland filed an adversary proceeding against

California Bank & Trust. *McFarland v. California Bank & Trust*, No. 16-02090 (Bankr. E.D. Cal. May 6, 2016) ("California Bank & Trust action"). That complaint alleged causes of action for fraud. 11 U.S.C. § 544; Cal. Civ. Code § 3439 et seq.; First Am. Compl., August 24, 2016, ECF No. 54. McFarland's contentions are well-summarized in her statements that California Bank & Trust "played a pivotal role in facilitating Wannakuwatte's scheme," advanced funds to Wannakuwatte on his "instruction," and without "any supporting documentation," and "turn[ed] a blind eye to many glaring red flags of potential fraud on the part of IMG." First Am. Compl. 3:8-19.

Eventually, McFarland and California Bank & Trust settled the action for a sizable (though confidential) sum.

**II. PROCEDURE**

Carter and Sweigart now move for summary judgment. Fed. R. Civ. P. 56, incorporated by Fed. R. Bankr. P. 7056. They contend that McFarland is judicially estopped by her statements in the California Bank & Trust action from asserting that they are "active participants" in the Ponzi scheme rather than "victims." Mem. P.&A. 1:27-28, October 13, 2020, ECF No. 543. McFarland opposes the motion.[1]

**III. JURISDICTION**

This court has jurisdiction. 28 U.S.C. §§ 1334(a)-(b), 157(b); *see also* General Order No. 182 of the Eastern District of California. This is a statutorily core, but a constitutionally non-core, proceeding. 28 U.S.C. § 157(b)(2)(H). The parties have consented to

---

[1] Carter and Sweigart have objected to portions of Christopher Sullivan's declaration. Objection, November 17, 2020, ECF No. 563. Defendants' objections are sustained and overruled as follows: (1) Objection No. 1: entire Decl. of Sullivan, overruled, LBR 7056-1(f) (lack of particularity and identification of impacted separate statement of facts); (2) Objection No. 2: sustained, Fed. R. Evid. FRE 602, 701; and (3) Objection No. 3: sustained insofar as it addresses plaintiff McFarland's intentions, Fed. R. Evid. 602.

4

final orders and judgments by this court by failing to object in a timely manner. Scheduling Order 2:12, 6:3-7, September 1, 2016, ECF No. 30 (setting deemed consent deadline 45 days prior to October 19, 2017); 28 U.S.C. § 157(c)(1). *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 38 (2014) (fraudulent conveyances); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1939 (2015) (implied consent).

**IV. LAW**

### A. Summary Judgment

Federal Rule of Civil Procedure 56 requires the court to grant summary judgment on a claim or defense "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), *incorporated by* Fed. R. Bankr. Proc. 7056. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (citing *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986)).

"The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor." *Swoger v. Rare Coin Wholesalers*, 803 F.3d 1045, 1047 (9th Cir. 2015) (citing *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001)).

A shifting burden of proof applies to motions for summary judgment. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Id*.

"Where the non-moving party [e.g., a plaintiff] bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* (citation omitted). The Ninth Circuit has explained that the non-moving party's "burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *Id.* "In fact, the non-moving party must come forth with evidence from which [the factfinder] could reasonably render a verdict in the non-moving party's favor." *Id.*

When the moving party has the burden of persuasion at trial (e.g., a plaintiff on claim for relief or a defendant as to an affirmative defense), the moving party's burden at summary judgment is to "establish beyond controversy every essential element of its . . . claim." *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation marks omitted). In such a case, there is no need to disprove the opponent's case "[i]f the evidence offered in support of the motion establishes every essential element of the moving party's claim or [affirmative] defense." Hon. Virginia A. Phillips & Hon. Karen L. Stevenson, *Federal Civil Procedure Before Trials, Calif. & 9th Cir. Edit.*, Summary Judgment, Burden of Proof ¶ 14:126.1 (Rutter Group 2019).

A party may support or oppose a motion for summary judgment with

affidavits or declarations that are "made on personal knowledge" and that "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). The assertion "that a fact cannot be or is genuinely disputed" may be also supported by citing to other materials in the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data." *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) (citing *Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978)). "Furthermore, a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

### B. Judicial Estoppel

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895); *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Known as judicial estoppel, where applicable, the rule prevents parties from changing positions. *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000). The rule applies to inconsistent positions taken in "the same litigation" and "in two different cases." *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 605 (9th

Cir. 1996) (citations omitted).

Judicial estoppel protects the integrity of the judicial process and falls within the trial court's discretion. *New Hampshire*, 532 U.S. at 750; *Soames Lane Trust v. Gonzalez (In re Soames Lane Trust)*, 2016 WL 4198426 *5 (9th Cir. August 8, 2016). To determine whether to invoke judicial estoppel, the court considers the following:

> (1) Is the party's later position clearly inconsistent with its earlier position? (2) Did the party succeed in persuading a court to accept its earlier position, creating a perception that the first or second court was misled? and (3) Will the party seeking to assert an inconsistent position "derive an unfair advantage or impose an unfair detriment on the opposing party?

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012), quoting *New Hampshire*, 532 U.S. at 750-751 (quotation marks omitted).

For the first element, the inconsistencies apparent in the latter case must be material to the issues in dispute in the prior case. *Baughman*, 685 F.3d at 1133 (holding that the Americans With Disabilities Act plaintiff's statement about her inability to use a wheelchair was not "peripheral" or "immaterial[,]" but "central" to her earlier claim that she couldn't access the defendant's facilities by using a wheelchair). Moreover, "clearly inconsistent positions" exactly oppose one another, and do not just undermine one another. *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998) (holding that judicial estoppel requires "mutually inconsistent positions"); *See* e.g., *Baughman*, 685 F.3d 1133. "Doubts about inconsistency" should be resolved against the party asserting judicial estoppel. *Contech Const. Prod., Inc. v. Heierli*, 764 F.Supp.2d 96, 116 (D.D.C. 2011); *Shea v. Clinton*, 880 F.Supp.2d 113, 117 (D.D.C. 2012).

1　　　　The party asserting judicial estoppel bears the burden of proof

2　as to its applicability.  *Abara v. Altec Indus., Inc.*, 838 F.Supp.2d

3　995, 1006 (E.D. Cal. 2011).

**V.　DISCUSSION**

5　　　　A trustee's right to avoid payments to Ponzi scheme investors is

6　largely determined by three things: (1) the amount of monies received

7　by the investors (net positive or negative to the initial investment);

8　(2) the investors' good faith, or lack thereof; and (3) what payments

9　they received within the statute of limitations:

> ...[F]ederal courts have generally followed a two-step process. First, to determine whether the investor is liable, courts use the so-called "netting rule."  Amounts transferred by the Ponzi scheme perpetrator to the investor are netted against the initial amounts invested by that individual. If the net is positive, the receiver has established liability, and the court then determines the actual amount of liability, which may or may not be equal to the net gain, depending on factors such as whether transfers were made within the limitations period or whether the investor lacked good faith. If the net is negative, the good faith investor is not liable because payments received in amounts less than the initial investment, being payments against the good faith losing investor's as-yet unsatisfied restitution claim against the Ponzi scheme perpetrator, are not avoidable within the meaning of UFTA....
>
> Second, to determine the actual amount of liability, the court permits good faith investors to retain payments up to the amount invested, and requires disgorgement of only the "profits" paid to them by the Ponzi scheme....Payments up to the amount of the initial investment are considered to be exchanged for "reasonably equivalent value," and thus not fraudulent, because they proportionally reduce the investors' rights to restitution.  If investors receive more than they invested, "[p]ayments in excess of amounts invested are considered fictitious profits because they do not represent a return on legitimate investment activity."

*Donell v. Kowell*, 533 F.3d 762, 771-72 (9th Cir. 2008).

　　　　In deciding whether the trustee's Carter/Sweigart action is barred by judicial estoppel, this court needs not look further than

9

the "clearly inconsistent positions" element.[2]  *New Hampshire*, 532 U.S. at 750-51; *Baughman*, 685 F.3d at 1133.

### A. Different Standards

Carter and Sweigart argue that McFarland's characterization of them as "victims" or "investors" in the California Bank & Trust action is inconsistent with her characterization of them as "co-perpetrators." Their argument fails since Carter and Sweigart may easily be both given the circumstances and the two positions are not mutually inconsistent. *Herbert J. Thomas Mem'l Hosp.*, 159 F.3d at 196.

Having sustained a net loss of $26.7 million the defendants are unquestionably victims. But whether they will be allowed to retain funds received from IMG/Wannakuwatte up to the amount of their initial investment is determined by their good faith, or lack thereof. *Donell*, 533 F.3d at 771 n. 3. Good faith is an objective standard and may be defeated if "circumstances would place a reasonable person on inquiry and a lack of due diligence." *In re Agric. Research & Tech. Group*, 916 F.2d 528, 535-36 (9th Cir. 1990). Since the standard requiring the defendants' disgorgement of monies received is relatively low, i.e., inquiry notice and a lack of due diligence, these differing positions, even if supported by the evidentiary

---

[2] This court believes that Carter and Sweigart have waived this affirmative defense by failing to plead it, ECF No. 13. *Go Global, Inc. v. Sig Rogich (In re Go Global, Inc.)*, 2016 WL 6901265 *10 (9th Cir. BAP November 22, 2016) (judicial estoppel is an affirmative defense that must be pled); First Am. Answer, July 6, 2017, ECF No. 43 (fourth and sixth affirmative defenses pleading equitable estoppel and estoppel by full performance). Though judicial estoppel may be raised sua sponte, *Allen v. C & H Distribs., LLC*, 813 F.3d 566, 571 n.4 (5th Cir. 2015), the court will not do so in this case. Lest the defendants perceive the court's ruling as based on a procedural deficiency that might be corrected by seeking leave to file an amended answer, Fed. R. Civ. P. 15(a)(2), *incorporated by* Fed. R. Bankr. P. 7015, the court will address the merits of the defense.

10

record, are not mutually inconsistent.

**B. Clear Inconsistency**

Carter and Sweigart failed to show that McFarland took "clearly inconsistent positions" with respect to their actions.[3] In the present action, McFarland contends that Carter and Sweigart are not "Innocent Investors" in the IMG Ponzi scheme. Responses to Request for Admission, Set One, Request No. 97 (Carter) and Request No. 100 (Carter), Response to Separate Statement of Undisputed Material Facts Exhs. 2 & 3, November 3, 2020, ECF No. 557.[4]

Carter and Sweigart contend that McFarland's assertion is directly contrary to her position towards them in the California Bank & Trust action. This court disagrees. In the California Bank & Trust action, McFarland's complaint specifically names those investors whom she believed to have acted without knowledge or notice of the fraud:

> [International Manufacturing Group] had a number of creditors whom could have avoided the [California Bank & Trust] Purported Principal Transfers...These creditors include, but are not limited to, the following (along with other innocent creditors, the "Innocent Creditors"): Ron Ashely, Ryan Ashley, Ashely Backman, Arless Botta, Inger

---

[3] The parties' discussion about what California Bank & Trust knew, or should have known, and when they knew, or should have known it, with respect to Wannakuwatte's activities is not germane to determine whether McFarland is judicially estopped with respect to Carter and Sweigart. The key issue is whether McFarland has taken mutually inconsistent positions with respect to Carter and McFarland's status or actions, and not whether blame attaches to California Bank & Trust. Any argument that McFarland's position in the California Bank & Trust action was that California Bank & Trust was Wannakuwatte's sole abettor is not supported by the record.

[4] Clear and unambiguous responses to requests for admission bind; ambiguous responses may be construed by the court to determine their scope and effect. *Johnson v. DeSoto County Bd. of Commrs*, 204 F.3d 1335, 1340 (11th Cir. 2000). The court has considered the plaintiff's responses to the numerous requests for admission cited and believes that both individually and collectively those admissions fall well short of admitting Carter and Sweigart's good faith in this matter and/or their status as innocent investors. Moreover, in response to the key Request for Admissions, Nos. 97, 100, which stated, "Admit that YOUR definition of Innocent Investors" in Paragraph 327 of the CBT COMPLAINT [includes Carter and Sweigart]," the plaintiff responded, "Denied."

11

>     Brenner, Dennis & Kathryn DeLucio, David & Alaina Divine,
>     Richard Gere, David & Janice Hill, Michael & Janine Jones,
>     Ellen Karlstad, Thomas Kim, July Leuvrey.
>
>     The Innocent Creditors could not have reasonably discovered
>     the existence of the Ponzi scheme, the existence of
>     [California Bank & Trust] Purported Principal Transfers, or
>     the fraudulent nature of the [California Bank & Trust]
>     Purported Principal Transfer prior to May 31, 2013...

First Am. Compl. ¶¶ 327-328, *McFarland v. California Bank & Trust*, No. 16-2090 (Bankr. E.D. Cal. 2016), ECF No. 54.

Later, in the California Bank & Trust action McFarland answered an interrogatory stating:

>     The Innocent Investors, as defined in the [First Amended
>     Complaint] who were actual unsecured creditors of
>     [International Manufacturing Group] and did not know or
>     suspect the existence of the [International Manufacturing
>     Group] Ponzi scheme until on or after May 31, 2013.  The
>     Innocent Investors are believed to include but not be
>     limited to the Innocent Investors identified in the [First
>     Amended Complaint] by name in paragraph 327 of the [First
>     Amended Complaint].  Additional Innocent Investors may
>     include but not be limited to Steven and Deanna Green
>     (Claim No. 3), and David Wellenbrock (Claim No. 14).  The
>     Innocent Investors could not have discovered the
>     [International Manufacturing Group] Ponzi scheme prior to
>     May 31, 2013....

Plaintiff's Response to California Bank & Trust Interrogatories, Set One, Interrogatory No. 4, *McFarland v. California Bank & Trust*, No. 16-2090 (Bankr. E.D. Cal. 2016).

Carter and Sweigart are absent from each list of "Innocent Creditors."  This is not the "clearly inconsistent" stance contemplated by *Pegram*, *New Hampshire*, or their children.  As a result, the motion will be denied.

/

/

/

/

12

**VI. CONCLUSION**

For each of these reasons, defendants' motion for summary judgment is denied. The court will issue an order from chambers.

Dated: February 18, 2021

*[signature]*

Fredrick E. Clement
United States Bankruptcy Judge

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| Attorneys for the Plaintiff(s) | Attorneys for the Defendant(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | **Office of the U.S. Trustee**<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Anthony Napolitano**<br>1000 Wilshire Blvd #1500<br>Los Angeles, CA 90017 | **Marc A. Caraska**<br>2100 Northrop Avenue, Ste 900<br>Sacramento, CA 95825 |
| **Joel Samuels**<br>1000 Wilshire Blvd #1500<br>Los Angeles, CA 90017 | |

14